*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LUANNE KOZMA,

        Plaintiff-Appellant,

v

SCOTT LAW and DEBRA LAW,

        Defendants-Appellees.

UNPUBLISHED
March 14, 2024

Nos. 363508; 364450
Charlevoix Circuit Court
LC No. 2022-080527-CZ

Before: PATEL, P.J., and RICK and FEENEY, JJ.

PER CURIAM.

These consolidated appeals arise from a zoning dispute between the parties. The trial court granted summary disposition in favor of defendants pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and awarded them costs and attorney fees. In Docket No. 363508, plaintiff appeals as of right the trial court's order awarding costs and attorney fees to defendants, arguing that the trial court committed procedural error when it calculated the award.[1] In Docket No. 364450, plaintiff appeals by delayed leave granted the trial court's orders granting summary disposition and costs and attorney fees in favor of defendants and denying plaintiff's motion for reconsideration of that order, arguing that the trial court erred when it determined that plaintiff's claim was frivolous and that costs and attorney fees were warranted. On this record, the

---

[1] In Docket No. 363508, plaintiff also sought to appeal the trial court's August 5, 2022 order granting defendants' motion for summary disposition and for costs and attorney fees, as well as a September 22, 2022 order denying plaintiff's motion for reconsideration of that order. However, plaintiff's October 21, 2022 claim of appeal was untimely regarding those two orders. This Court dismissed plaintiff's appeal regarding those orders without prejudice. *Kozma v Law*, unpublished order of the Court of Appeals, entered November 29, 2022 (Docket No. 363508). Plaintiff then filed a delayed application for leave to appeal the trial court's summary disposition and reconsideration orders in Docket No. 364450. This Court granted the delayed application and consolidated that appeal with Docket No. 363508. *Kozma v Law*, unpublished order of the Court of Appeals, entered June 20, 2023 (Docket No. 364450).

trial court erred by determining that plaintiff's claim was frivolous, and thus erred by awarding attorney fees to defendants. Accordingly, in Docket No. 364450, we reverse the trial court's ruling that plaintiff's claim was frivolous, as well as the portion of the August 5, 2022 order awarding costs and attorney fees. We also reverse the October 4, 2022 order awarding costs and attorney fees to defendants in Docket No. 363508.

## I. FACTUAL BACKGROUND

Plaintiff and defendants each own properties near one another on the shoreline of Lake Charlevoix in Hayes Township, Michigan.[2] Defendants planned to build various recreational facilities and several cabins on their property. As part of the construction, defendants proposed dredging a channel from Lake Charlevoix leading to a larger, dredged boat basin. A boathouse would have then sat upon the far end of the basin with slips to dock several boats. The boathouse space above the boat slips would have been an approximately 4,500-square-foot "event space," and would have been connected to the property's main residence by an outdoor walkway.

This case ultimately arises from plaintiff's attempt to prevent defendants from dredging the lakeshore and building the boathouse. Notably, along with the zoning matter at issue here, plaintiff was involved in a separate lawsuit against Hayes Township and several of its officials regarding defendant's boathouse plans and the proper interpretation of the Hayes Township zoning ordinance.[3] A November 29, 2021 affidavit executed by the Hayes Township zoning administrator, and submitted to the trial court in the aforementioned lawsuit, sheds some light on the matter. According to the affidavit, only alterations made by defendants to a strip of land 50 feet inland from the lake's ordinary high-water mark, called the "shoreland protection strip," required zoning board approval. The zoning administrator attested that defendants did not need a permit to dredge along the lakefront because dredging activities were regulated exclusively by the Michigan Department of Environment, Great Lakes, and Energy (EGLE) and the United States Army Corps of Engineers.

In November 2019, the zoning authority approved a plan submitted by defendants concerning the shoreland protection strip. In July 2020, defendants submitted a zoning application for the boathouse. Within two days, the zoning administrator determined that defendants did not need to go through any in-depth zoning approval process because the boathouse was to be connected to the property's principal residence. The administrator thus granted defendants a permit to build the boathouse. It does not appear that defendants took any further action toward beginning the dredging and boathouse project until 2022.

Plaintiff treated the zoning administrator's affidavit as an official determination regarding the zoning authority's interpretation of the zoning ordinance and filed an appeal with the Hayes Township zoning board of appeals. Plaintiff argued that the zoning authority erred by treating

---

[2] This case was decided at the pleading stage before any discovery took place. The facts presented are drawn from the allegations made in plaintiff's original verified complaint and amended complaint, as well as documents plaintiff's verified complaint incorporated by reference.

[3] *Kozma v Hayes Twp*, Charlevoix Circuit Court (LC No. 21-0604-27CZ).

defendants' proposed channel and basin and the proposed boathouse as separate projects requiring separate approval, rather than treating the entire thing as one project. According to plaintiff, defendants' proposal would violate a zoning ordinance prohibiting the construction of a structure at or below ground level within 100 feet of the lake's ordinary high-water mark. Plaintiff argued that the channel and basin would be built within 100 feet of the ordinary high-water mark, and moving the shoreline by dredging the channel and basin would necessarily extend the ordinary high-water mark further inland. Therefore, the boathouse would have sat within 100 feet of the ordinary high-water mark. Plaintiff asked the zoning board of appeals to find that channels, basins, and boathouses were structures prohibited by the zoning ordinance and that defendants' proposal, in particular, was prohibited by the zoning ordinance.

In early 2022, defendants applied for a permit from EGLE and the Army Corps of Engineers to dredge their proposed channel and basin. Sometime in late May 2022, plaintiff learned from the Army Corps of Engineers that defendants' permit was given preliminary approval. On May 25, 2022, plaintiff saw excavating equipment and dump trucks parked at defendants' property. On May 27, 2022, plaintiff saw more excavating equipment arrive on defendants' property. Later that day, plaintiff's counsel sent an e-mail to defendants' counsel asking for assurance that defendants were not beginning work on the project. Plaintiff's counsel warned that plaintiff would file for a temporary restraining order and a preliminary injunction if she did not get an assurance. Less than an hour later, defendants' counsel responded to the e-mail, stating that no excavation or construction work on the dredging and boathouse project were imminent. Despite the prompt response, plaintiff filed a verified complaint and motion for a temporary restraining order and a show-cause hearing on plaintiff's request for a preliminary injunction. Plaintiff sought to enjoin defendants from clearing any vegetation or excavating any land relating to the dredging and boathouse project until the zoning board of appeals decided plaintiff's appeal. On May 31, 2022, plaintiff withdrew her request for a temporary restraining order and a show-cause hearing, explaining that the temporary restraining order was unnecessary on the basis of the assurance from defendants' counsel that no construction was imminent.

On June 2, 2022, defendants' counsel sent an e-mail to plaintiff's counsel stating that defendants viewed plaintiff's claim as meritless. The e-mail further stated that if plaintiff voluntarily dismissed the case, defendants would provide plaintiff with "notice when the application for the final necessary permit is submitted." Plaintiff's counsel responded to the e-mail asking for further clarification that defendants were agreeing to delay work on the dredging and boathouse project until after plaintiff's appeal to the zoning board of appeals was decided. On June 3, 2022, plaintiff filed a motion to reinstate her request for a temporary restraining order and request for a show-cause hearing on a preliminary injunction on the basis of the lack of assurance that defendants were not beginning work on the dredging and boathouse project. On June 6, 2022, plaintiff filed a second motion to withdraw her request for a temporary restraining order because the parties agreed that defendants would not begin construction on the dredging and boathouse project until after applying for another permit, which would give plaintiff an opportunity to be heard by the zoning authority. On June 13, 2022, plaintiff filed an amended complaint that withdrew her request for a temporary restraining order and moved for a preliminary injunction prohibiting defendants from beginning work on the dredging and boathouse project. Plaintiff alleged that defendants' assurances were no longer credible because defendants flew a helicopter at a low altitude above plaintiff's property, which violated a 2019 agreement under which defendants would only fly their helicopters over their own property.

-3-

On July 5, 2022, defendants filed an answer to plaintiff's amended complaint, as well as a motion for summary disposition and for costs and attorney fees. Defendants argued that summary disposition under MCR 2.116(C)(8) was proper because there was no legal cause of action plaintiff could pursue related to any construction on defendants' property. They further contended that an award of costs and attorney fees was warranted because plaintiff filed a lawsuit that failed to state a valid claim. In response, plaintiff argued that she had a viable cause of action because, under MCL 125.3604(3), work on defendants' dredging and boathouse project was required to be stayed pending the outcome of plaintiff's appeal with the zoning board of appeals.

On August 5, 2022, the trial court held a hearing on defendants' motion for summary disposition and for costs and attorney fees. The court ultimately granted defendants' motion for summary disposition and for costs and attorney fees on the record. That same day, the court entered an order granting summary disposition in favor of defendants and awarding costs and attorney fees in an amount to be determined later. The order gave defendants seven days to submit an affidavit to establish costs and attorney fees. On August 15, 2022, the zoning board of appeals voted four-to-one to dismiss plaintiff's appeal to the board.[4]

On August 16, 2022, defendants filed a motion requesting $40 in costs and $10,500 in attorney fees. In support of the calculation of attorney fees, one of defendants' attorneys submitted an affidavit and invoice requesting $4,500 in attorney fees, and another of defendants' attorneys submitted an affidavit and invoice requesting $6,000 in attorney fees.

On August 24, 2022, plaintiff filed a response to defendants' motion for costs and attorney fees. Plaintiff argued that the trial court should not assess costs and attorney fees because defendants did not comply with the trial court's August 5, 2022 order requiring them to submit proofs within seven days. On August 24, 2022, plaintiff also filed a motion for reconsideration of the trial court's order granting defendants' request for costs and attorney fees. Plaintiff argued that the trial court had been misled by defendants. Plaintiff pointed out that at the August 5, 2022 hearing on defendants' motion for summary disposition, defendants told the court that they would not agree to any stay in construction because they were trying to complete a construction project by Christmas that would allow them to host a large family event. However, at the August 15, 2022 zoning board of appeals hearing, defendants represented that they had no plans to begin work on a boathouse.

On September 20, 2022, the trial court held a hearing on defendants' request for costs and attorney fees. Although the trial court did not grant a full hearing on plaintiff's motion for reconsideration, the trial court discussed its forthcoming opinion and order denying plaintiff's

---

[4] The decision of the board of zoning appeals was not made part of the trial court record. However, the minutes from the August 15, 2022 meeting in which the board of zoning appeals made the decision is a public record. Additionally, it bears noting that after plaintiff's appeal was dismissed, the zoning board of appeals held another hearing on a petition from plaintiff and two other residents, asking the board to determine whether the Hayes Township zoning ordinance allows for the construction of channels and basins on the Lake Charlevoix shoreline. The board of zoning appeals voted four-to-one to interpret the zoning ordinance as prohibiting excavation of the Lake Charlevoix shoreline to install a channel or boat basin.

motion for reconsideration. The trial court stated that the automatic-stay statute was inapplicable to the facts of this case, so plaintiff had not pleaded any legal basis under which the trial court could have granted plaintiff equitable relief. The trial court stated that anything that happened during zoning board of appeals proceedings was irrelevant because the trial court was required to decide the motions on the basis of the facts that were before the court when the motions were decided. Regarding plaintiff's request that the court deny defendants' motion for costs and attorney fees on the basis of defendants' untimely filing, defendants stated that their proposed filing was completed within seven days, but defendants' counsel chose to send it to plaintiff to seek any response plaintiff had to the motion before filing it with the trial court. Plaintiff argued that defendants should not be awarded any costs or attorney fees because defendants' counsel did not move to extend the deadline for filing documents relating to the amount sought and did not contact plaintiff's counsel until after the deadline for filing a bill of costs had passed. The trial court found that defendants' neglect in filing the motion late was excusable, and turned to the calculation of attorney fees. The trial court ultimately concluded that it was reasonable to assess attorney fees for one attorney only and awarded attorney fees for 20 billable hours at $300 an hour, the higher amount billed between defendants' two attorneys, and $40 for motion-filing fees.

On September 21, 2022, the trial court entered an opinion and order denying plaintiff's motion for reconsideration. The trial court concluded that plaintiff's claim had no basis in law or fact. The trial court reasoned that defendants had no permit or pending application for a permit to build a boathouse, and plaintiff had no reason to suspect defendants were beginning construction on the dredging and boathouse project without seeking new permits. The trial court further reasoned that the automatic-stay statute was inapplicable in this case because the zoning authority had issued no permit and plaintiff, therefore, did not have a valid appeal to the zoning board of appeals. On October 4, 2022, the trial court entered an order awarding defendants $6,000 in attorney fees and $40 in costs.

## II. ANALYSIS

In Docket No. 364450, plaintiff argues that the trial court erred when it determined that her claim was frivolous. Relatedly, in Docket No. 363508, plaintiff argues that the trial court erred by awarding attorney fees to defendants for duplicative and unnecessary work. We agree that plaintiff's claim was not frivolous, and that defendants were thus not entitled to attorney fees.

"This Court reviews a trial court's decision to award sanctions for submitting a frivolous filing for an abuse of discretion." *Hairston v Josh LKU*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 363030); slip op at 10. Because a trial court's finding regarding whether an action was frivolous involves a question of fact, this Court reviews those findings for clear error. *Pontiac Country Club v Waterford Twp*, 299 Mich App 427, 438-439; 830 NW2d 785 (2013). Additionally, this Court reviews the reasonableness of an award of attorney fees for an abuse of discretion. *Teran v Rittley*, 313 Mich App 197, 208; 882 NW2d 181 (2015). "We review a trial court's findings of fact underlying the award of attorney fees for clear error, and we review any underlying issues of law de novo." *Id*. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 92; 662 NW2d 387 (2003). "This Court reviews de novo whether the trial court

properly interpreted and applied the statutes and court rules." *Hairston*, ___ Mich App at ___; slip op at 11.

"Under Michigan law, a party that maintains a frivolous suit or asserts frivolous defenses is subject to sanctions under applicable statutes and court rules." *BJ's & Sons Constr Co Inc v Van Sickle*, 266 Mich App 400, 404; 700 NW2d 432 (2005). Under MCL 600.2591(1):

> Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

Additionally, under MCL 600.2591(3):

> (a) "Frivolous" means that at least 1 of the following conditions is met:
>
> (*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.
>
> (*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.
>
> (*iii*) The party's legal position was devoid of arguable legal merit.

The trial court determined that plaintiff's claim was frivolous only on the basis that the claim was devoid of arguable legal merit under MCL 600.2591(3)(a)(*iii*). "The determination whether a claim or defense is frivolous must be based on the circumstances at the time it was asserted." *Jerico Constr Inc v Quadrants Inc*, 257 Mich App 22, 36; 666 NW2d 310 (2003). "Not every error in legal analysis constitutes a frivolous position." *Id.* "The mere fact that [a] plaintiff did not ultimately prevail does not render the [claim] frivolous." *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002). "Instead, a claim is devoid of arguable legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 711; 950 NW2d 502 (2019).

A trial court's determination of frivolousness involves consideration of both the applicable law and the facts supporting a claim. *Hairston*, ___ Mich App at ___; slip op at 10-11. The trial court did not offer much rationale for why it determined that plaintiff's claim was frivolous, and its full reasoning can only be discerned from piecing together several sources. When granting defendants' motions for summary disposition and costs and attorney fees during the August 5, 2022 hearing, the trial court made a conclusory statement that summary disposition was appropriate because plaintiff could not state a valid claim for injunctive relief and a conclusory finding that plaintiff's claim was frivolous. At the September 20, 2022 hearing on defendants'

award of costs and attorney fees, the trial court briefly summarized MCL 125.3604(3)[5] and concluded that the statute did not form a basis for the trial court to order injunctive relief. In its September 21, 2022 opinion and order denying plaintiff's motion for reconsideration, the trial court essentially assumed that the automatic-stay provision of MCL 125.3604(3) only applies to a specific zoning permit sought by a landowner. According to the court, in the absence of a pending permit for the dredging and boathouse project or facts showing that defendants may begin the project without applying for required permits, MCL 125.3604(3) was simply inapplicable to plaintiff's claim.

On the basis of the trial court's stated rationale, it appears that the trial court interpreted MCL 125.3604(3) in isolation. Statutes must be interpreted as a whole, within the context of the statutory scheme. *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 544; 942 NW2d 696 (2019). Neither this Court nor our Supreme Court has ever interpreted the automatic-stay provision of MCL 125.3604(3). In lieu of any official interpretation by Michigan's appellate courts, plaintiff offered a reasonable interpretation of the Michigan Zoning Enabling Act, MCL 125.3101 *et seq.*, arguing that the automatic-stay provision of MCL 125.3604(3) applies to construction on a specific project when there is an appeal of a determination that no permit is required for the project. The two central questions are 1) whether an appeal of a determination made by a zoning authority that no permit is necessary for a project triggers the automatic-stay provision and 2) whether the automatic-stay provision prohibits work on a project until the zoning board of appeals has decided the appeal. Without deciding the proper interpretation of the statute, it can be concluded that plaintiff's claim had arguable legal merit because it was sufficiently grounded in law and fact.

The Michigan Zoning Enabling Act supports plaintiff's argument that an appeal of a determination that no permit is necessary for a project triggers the automatic-stay provision. Under MCL 125.3603(1), a zoning board of appeals "shall hear and decide appeals from and review any administrative order, requirement, decision, or determination made by an administrative official or body charged with enforcement of a zoning ordinance adopted under this act." Citizens are permitted to appeal decisions made by a zoning authority, so long as the person is aggrieved by the decision. MCL 125.3604(1). The statute also indicates that an aggrieved person may challenge an interpretation of a zoning ordinance that involves a specific proposed project. Under MCL 125.3604(5):

> If the zoning board of appeals receives a written request seeking an interpretation of the zoning ordinance or an appeal of an administrative decision, the zoning board of appeals shall conduct a public hearing on the request. Notice shall be given as required under section 103. However, *if the request does not*

---

[5] MCL 125.3604(3) states: "An appeal to a zoning board of appeals stays all proceedings in furtherance of the action appealed. However, if the body or officer from whom the appeal is taken certifies to the zoning board of appeals after the notice of appeal is filed that, by reason of facts stated in the certificate, a stay would in the opinion of the body or officer cause imminent peril to life or property, proceedings may be stayed only by the restraining order issued by the zoning board of appeals or a circuit court."

*involve a specific parcel of property*, notice need only be published as provided in section 103(1) and given to the person making the request as provided in section 103(3). [Emphasis added.]

Under MCL 125.3103(1), a zoning board of appeals is only required to publish notice of a meeting "in a newspaper of general circulation in the local unit of government not less than 15 days before the date of the hearing." MCL 125.3103(2) provides, in pertinent part, that "[n]otice required under this act shall be given as provided under subsection (3) to the owners of property that is the subject of the request." MCL 125.3103(2) and (3) require that notice must be either personally delivered to the owner of the property that is the subject of the hearing or delivered by United States mail or a courier service no less than 15 days before the hearing. Regarding the hearing itself, MCL 125.3604(6) provides that "a party may appear personally or by agent or attorney." Thus, the statute allows a person aggrieved by an interpretation of a zoning ordinance to challenge the interpretation as it applies to a specific project, and the statute gives due-process rights to the owner of the property that is the subject of the appeal. That framework reasonably supports the conclusion that an appeal of an interpretation of a zoning ordinance as it relates to a specific property is an "appeal to the zoning board of appeals" for purposes of MCL 125.3604(3), and the automatic-stay provision applies.

MCL 125.3604(3) provides, in pertinent part, that "[a]n appeal to the zoning board of appeals stays all proceedings in furtherance of the action appealed." Whether construction is automatically stayed under the statute concerns the interpretation of what constitutes "proceedings in furtherance of the action appealed" under MCL 125.3604(3). The Michigan Zoning Enabling Act does not define the terms "proceedings," "furtherance," or "action." See MCL 125.3102. Plaintiff argues that the terms should all be interpreted broadly to include a property owner's commencement of work on the project that is the subject of the appeal. According to plaintiff, construction is a proceeding and that proceeding is in furtherance of the action appealed. That interpretation is within the range of several reasonable interpretations of the statute. Notably, the statute refers to an "action," rather than a permit. This suggests that the term "action appealed" should be read broadly to mean that the action is the construction project, not the permitting process, and construction is stayed. On the other hand, consultation of a dictionary indicates that "proceeding" more typically connotes the conducting of official business,[6] which could indicate that the Legislature intended to confine a stay to the processing of a permit by a zoning authority. There is also a more middle-of-the-road interpretation under which a property owner would be stayed from engaging in any official proceedings relating to the action appealed, which, in this case, would include applying for a dredging permit from EGLE and the Army Corps of Engineers.

Resolution of the underlying issue may prove to be a close question. However, plaintiff's interpretation is at least arguably correct. If the automatic-stay provision did not apply to construction, the Legislature would have essentially created a right without a remedy. If a zoning administrator erroneously concluded that no permit was needed for a project, there would be no mechanism for stopping construction until after the zoning board of appeals decided the appeal.

---

[6] See *Merriam-Webster's Collegiate Dictionary* (13th ed) (defining "proceeding" as "legal action;" "an official record of things said or done").

After an aggrieved person filed an appeal, a zoning board of appeals would have to schedule a hearing and provide at least 15 days' notice of the hearing before it could decide the appeal, potentially allowing time for irreparable harm to occur. Accordingly, enabling a zoning administrator to unilaterally allow construction on a project before an appeal was decided would subvert the purpose of the appeals process. Therefore, there is legal merit to plaintiff's contention that the automatic-stay provision applies to construction while an appeal regarding a determination relating to the project is pending. The facts of this case demonstrate how excluding construction from the statute's application would be problematic and contrary to the purpose of allowing an appeal. In this case, had defendants actually begun dredging, there would have been no means to prevent the irreparable destruction of a portion of the lakeshore. Importantly, the zoning board of appeals ultimately concluded that plaintiff's interpretation of the Hayes Township zoning ordinance was correct and that the ordinance prohibited dredging and the construction of boathouses on the shoreline. Under the circumstances, plaintiff's claim was sufficiently grounded in law.

Plaintiff's claim was also sufficiently grounded in fact to state a claim upon which relief could have been granted. Plaintiff alleged facts in her amended complaint, supported by evidence offered in her initial verified complaint, to plausibly support the contention that defendants planned to begin dredging the shoreline before the zoning board of appeals decided plaintiff's appeal. On December 3, 2021, plaintiff learned via an affidavit sworn by the Hayes Township zoning administrator that the administrator determined that no zoning approval was necessary for defendants to begin dredging the channel and basin. Plaintiff considered the affidavit to be a determination made by the zoning administrator and appealed that determination to the zoning board of appeals on December 20, 2021. Plaintiff's main contention was that the dredging and boathouse project had to be considered as one project, rather than the three separate projects the zoning administrator had considered in the proposal, and that the zoning ordinance prohibited defendants' proposed project in its entirety. In early 2022, while plaintiff's appeal was pending, defendants applied for a permit with EGLE and the Army Corps of Engineers to dredge their proposed channel and basin. Plaintiff attached to her verified complaint a March 28, 2022 e-mail written by the zoning administrator reaffirming his determination that the zoning authority could neither grant or deny permission to dredge along the shoreline. In the days before plaintiff filed her original complaint, plaintiff learned that defendants had preliminary approval from EGLE and the Army Corps of Engineers to dredge the channel and basin and plaintiff observed excavating equipment and dump trucks on defendants' property. On May 27, 2022, plaintiff filed her verified complaint seeking a temporary restraining order and preliminary injunction, and plaintiff's counsel e-mailed defendants' counsel the same day asking for an assurance that defendants were not beginning to dredge on the shoreline. Later that day, one of defendants' attorneys gave plaintiff an unequivocal assurance that "no construction or excavation work is imminent." However, the attorney's e-mail also stated that he would not be able to talk to defendants until the following week. On May 31, 2022, plaintiff filed a motion to withdraw her requests for a temporary restraining order and preliminary injunction, trusting the assurance offered by defendants' counsel.

After defendants' attorney consulted with defendants, defendants seemed to pull back from an explicit assurance that they would not begin dredging the channel and basin until after plaintiff's appeal to the zoning board of appeals was decided. In a June 2, 2022 e-mail, defendants proposed that, in exchange for plaintiff dismissing her claim, "we will commit to giving you notice when the application for the final necessary permit is submitted." Plaintiff's counsel replied to the e-

mail, stating that plaintiff did not know what defendants meant by "final necessary permit" and asking for a more explicit promise from defendants that they would not begin dredging until after the zoning board of appeals decided plaintiff's appeal. On June 3, 2022, plaintiff filed a motion to reinstate her request for a temporary restraining order and preliminary injunction. Later that day, defendants told plaintiff that they were not beginning work on the dredging and boathouse project until after applying for additional permits, and plaintiff filed a second motion to withdraw her request for a temporary restraining order and preliminary injunction on June 6, 2022.

However, the agreement between plaintiff and defendants did not last long. Later in the day on June 6, 2022, a helicopter leaving defendants' property flew at a low altitude over plaintiff's property, which plaintiff interpreted as a provocation. Plaintiff viewed the intrusion of the helicopter as an intentional violation of a 2019 agreement under which defendants agreed that they would only fly helicopters over their own property. Plaintiff no longer found defendants' assurances that they would not begin dredging on their property before applying for new permits credible. On June 13, 2022, plaintiff filed an amended complaint that sought a preliminary injunction, but not a temporary restraining order, prohibiting defendants from beginning work on the dredging and boathouse project until plaintiff's appeal with the zoning board of appeals was decided. Plaintiff's amended complaint recounted the history of the litigation regarding the various filings and communication between the parties. Plaintiff also alleged that, according to documentation plaintiff received from EGLE and the Army Corps of Engineers, defendants planned to excavate nearly 15,000 cubic yards of material along the lakefront. It was from that point when plaintiff filed her amended complaint that the trial court was required to assess whether plaintiff's claim was sufficiently grounded in fact. *Jerico Constr, Inc*, 257 Mich App at 36.

The trial court abused its discretion when it awarded costs and attorney fees because it committed legal and factual errors. The trial court decided defendants' motion for summary disposition, brought under MCR 2.116(C)(8), on the basis that plaintiff could not state a claim upon which relief could be granted. When deciding a motion brought under MCR 2.116(C)(8), a court must decide the motion on the basis of the pleadings alone, accepting as true all factual allegations. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). A trial court may not assess credibility when deciding such a motion. *Johnson v Detroit Edison Co*, 288 Mich App 688, 696; 795 NW2d 161 (2010). When plaintiff filed her amended complaint, the most pertinent of plaintiff's allegations were that defendants were finalizing a dredging permit with EGLE and the Army Corps of Engineers and moving excavating equipment onto their property. These allegations were supported by evidence offered in plaintiff's original verified complaint. At that stage of the litigation, plaintiff's claim was not so implausible that no factual development could show that she was entitled to relief under the legal theory of her claim. In deciding plaintiff's motion for reconsideration, the trial court reasoned that plaintiff had no factual basis to believe that defendants would begin work on the dredging and boathouse project without obtaining "required permits from the applicable governmental authorities." The trial court's reasoning was rooted in a factual error. When plaintiff filed her amended complaint, the zoning administrator maintained the position that only EGLE and the Army Corps of Engineers could permit dredging on the lakeshore, and defendants were finalizing a permit to dredge with those agencies. When plaintiff filed her amended complaint, defendants had only offered to notify plaintiff when they submitted applications for new permits. At least as it pertained to dredging, defendants did not have to apply for any additional permit to begin work. The trial court's

-10-

assumption that defendants could not begin dredging until defendants applied for new permits and that plaintiff would have a chance to challenge any permit applications is clearly erroneous.

Further, the trial court effectively decided that plaintiff's claim lacked factual merit on the basis of an impermissible credibility determination. The trial court never reached the merits regarding whether a preliminary injunction was warranted in this case, which would have called upon the trial court to make factual findings. Nevertheless, the trial court considered as true the in-court statements of defendants' counsel, made long after plaintiff filed her amended complaint, that defendants were not planning to begin dredging along the shoreline or work on the proposed boathouse. When plaintiff filed her amended complaint, the finalization of defendants' dredging permit from EGLE and the Army Corps of Engineers was the only legal impediment left before defendants could begin dredging, aside from plaintiff's claim. To avoid being sanctioned by the court, the trial court essentially required plaintiff to accept defendants' ambiguous statements regarding permitting for their construction plans as proof that they would not begin dredging. Had the trial court reached the merits of plaintiff's claim for a preliminary injunction, it may have been justified in making a factual finding that defendants were not planning to imminently dredge along the shoreline, which in turn would have made a preliminary injunction inappropriate. However, at the time plaintiff filed her amended complaint, plaintiff presented a plausible claim on the basis of the allegations that defendants were finalizing a dredging permit, moving excavating equipment onto their property, and equivocating regarding their construction plans.

Under the circumstances, plaintiff's claim was not frivolous because it was sufficiently grounded in law and fact. The trial court clearly erred when it determined that plaintiff's claim had no arguable legal merit and that there was no factual basis for plaintiff's claim. Therefore, the trial court abused its discretion when it found that plaintiff's claim was frivolous and awarded defendants costs and attorney fees.[7]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michelle M. Rick
/s/ Kathleen A. Feeney

---

[7] Plaintiff also argues that the trial court abused its discretion by accepting defendants' untimely filing regarding the award of costs and attorney fees. Because we conclude that the trial court erred by concluding that plaintiff's claim was frivolous and by awarding attorney fees to defendants, we need not address the merits of this issue.